UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIMEE E. REENDERS,<br><br>  Plaintiff,<br><br>  v.<br><br>PREMIER RECOVERY GROUP,<br><br>  Defendant. | Case No.18-cv-07761-PJH   (JSC)<br><br>**REPORT AND RECOMMENDATION RE: DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 19 |

Plaintiff Aimee Reenders alleges that Defendant Premier Recovery Group violated the Fair Debt Collection Practices Act through its debt collection activities in November 2018. The Clerk entered default against Defendant on March 15, 2019 after it failed to appear or otherwise defend itself in this matter. (Dkt. No. 18.) Plaintiff's unopposed motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) was referred to the undersigned magistrate judge for a report and recommendation. (Dkt. No. 19.) Having considered the motion and relevant legal authority, the Court recommends that the District Judge GRANT Plaintiff's motion for default judgment as set forth below.

**BACKGROUND**

In November 2018, Plaintiff began receiving collection calls on her cellular phone from Defendant "attempting to collect an alleged defaulted Payday loan [] in which Defendant acquired the right to collect on while Plaintiff was in default." (Complaint at ¶ 6.) Plaintiff is the sole subscriber, owner, possessor, and operator of the cellular phone on which she received these calls. (*Id*. at ¶ 7.) In addition to the calls, Defendant left four voicemail messages on her cellular phone "falsely" stating that "it filed a civil law suit against Plaintiff for 'check fraud.'" (*Id*. at ¶ 8.)

These communications caused Plaintiff stress and she panicked that a civil lawsuit had been filed against her. (*Id*. at ¶¶ 9-10.) Defendant did not send Plaintiff any correspondence notifying her of her rights pursuant to 15 U.S.C. § 1692g. (*Id*. at ¶ 11.)

In December 2018, Plaintiff filed the underlying action alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e, 1692f, and 1692g.[1] (Dkt. No. 1.) After Defendant failed to appear, the Clerk entered its default on March 15, 2019. (Dkt. No. 18.) Plaintiff thereafter filed the now pending motion for default judgment which was referred to the undersigned for a report and recommendation. (Dkt. Nos. 19, 22.)

## DISCUSSION

**A.  Jurisdiction and Service of Process**

When a party seeks entry of default judgment, courts have a duty to examine their own jurisdiction—both subject matter and personal. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (internal citation omitted). Here, the Court may exercise subject matter jurisdiction because the FDCPA claim raises a federal question, 28 U.S.C. § 1331. Personal jurisdiction is likewise satisfied because Plaintiff alleges that Defendant uses the mail and/or telephone for the principle purpose of collecting defaulted consumer debts from consumers, including consumers in the State of California. (Dkt. No. 1 at ¶ 5.) Further, Plaintiff resides in California and alleges that Defendant contacted her on her cellular phone several times to collect on a debt. Defendant has thus purposefully availed itself to jurisdiction in California through its debt collection activities in this state which give rise to the underlying claims. *See Freligh v. Roc Asset Sols., LLC*, No. 16-CV-00653-MEJ, 2016 WL 3748723, at *3 (N.D. Cal. June 8, 2016), report and recommendation adopted, No. 16-CV-00653-YGR, 2016 WL 3747616 (N.D. Cal. July 11, 2016) (holding that personal jurisdiction existed over a non-resident defendant in an FDCPA action because "Defendant contacted Plaintiff in California by telephone to collect Plaintiff's alleged debt, [thereby performing] acts or transactions within the forum" and because "Plaintiff's claims arise

---

[1] Although Plaintiff's complaint also lists the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 in the caption, the complaint itself contains no allegations with respect to the Rosenthal Fair Debt Collection Practices Act. The Court thus only analyzes Plaintiff stated allegations under the FDCPA.

out of the telephone calls made by Defendant" in the forum state); *Pelaez v. MCT Grp., Inc.*, No. 2:10-CV-00733, 2011 WL 500215, at *3 (D. Nev. Feb. 10, 2011) ("Individuals should be able to file suit in the state where they receive alleged illegal communications by out-of-state collection agencies. If not, collection agencies 'could invoke the protection of distance and send violative letters with relative impunity.'").

The Court must also assess whether the defendant against whom default judgment is sought was properly served with notice of the action. *Penpower Tech. Ltd. v. S.P.C. Tech.*, 27 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (internal quotation marks and citation omitted). A plaintiff may serve a corporation, partnership, or association by delivering a copy of the summons and complaint to an agent "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiff served the summons and complaint on Defendant by personally serving its registered agent for service of process.[2] (Dkt. No. 17.) Thus, the Court concludes that the preliminary requirements of jurisdiction and service of process are satisfied.

**B.      Default Judgment is Appropriate**

After entry of default, a court may grant default judgment on the merits of the case. Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the complaint related to liability are accepted as true and deemed admitted by the non-moving party. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

---

[2] Although service was not made at the address registered for service of process, it was personally made on the registered agent for service at an alternative address provided by the registered agent for service of process. (Dkt. Nos. 17-1; 17-3.)

3

The majority of the *Eitel* factors support default judgment in this case.

**1.      Possibility of Prejudice**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered.  *Eitel*, 782 F.2d at 1471.  If Plaintiff is left without remedy if default judgment is denied, this factor weighs in favor of default judgment.  *See e.g.*, *Allegro Consultants, Inc. v. Wellington Techs., Inc.*, No. 13-cv-02204-BLF, 2016 WL 1623941, at *2 (N.D. Cal. Apr. 25, 2016) (finding possibility of prejudice weighed in favor of default judgment because plaintiff would lose the ability to recoup unpaid balance in breach of contract action).  Here, like *Allegro*, Plaintiff's only recourse is default judgment because Defendant has failed to respond to the complaint.

Thus, the first factor weighs in favor of default judgment.

**2.      Merits of Plaintiff's Substantive Claims/Sufficiency of the Complaint**

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the complaint.  Courts often analyze these two factors together.  *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp 2d 1038, 1048 (N.D. Cal. 2010).  In analyzing the second and third *Eitel* factors, the Court accepts as true all well-pleaded allegations regarding liability.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (internal citation omitted).

"In order to state a claim under the FDCPA, a plaintiff must show: 1) that [s]he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA."  *Freeman v. ABC Legal Services, Inc.*, 827 F. Supp.2d 1065, 1071 (N.D. Cal. 2011).  Here, Plaintiff alleges that Defendant contacted her "attempting to collect an alleged defaulted Payday loan" and that Defendant "is a collections agency whose primary purpose is collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others."  (Dkt. No. 1 at ¶¶ 5, 6.)  These allegations satisfy the first three prongs.  *See* 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt."); 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of

4

a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."); 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person" the "principal purpose" of whose business "is the collection of any debts," or "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.").

As for the fourth prong, Plaintiff alleges that Defendant violated three provisions of the FDCPA: (1) Section 1692e based on Defendant's false representation that it would sue her for check fraud and that it had filed a civil lawsuit against her (Dkt. No. 1 at ¶¶ 23-24); (2) Section 1692f based on Defendant's threats to sue Plaintiff for check fraud, call her employer, and garnish her wages (*id*. at ¶ 26); and (3) Section 1692g based on Defendant's failure to inform Plaintiff of her rights (*id*. at ¶¶ 27-29).

### a. 15 U.S.C. § 1692e

Section 1692e prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e sets forth a non-exclusive list of conduct that constitutes a violation, including making a "false representation of the character, amount, or legal status of any debt" or a "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" or a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(2), (4), (5). Defendant's threat to sue Plaintiff for check fraud and falsely representing that it had filed a civil suit against states a claim under this section.

### b. 15 U.S.C. § 1692f

Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f. The FDCPA does not define "unfair" or "unconscionable," but Section 1692f provides eight examples of improper conduct "without limiting the general application" of the statute. *See id*. Here, Plaintiff does not rely on one of the listed examples and

instead essentially relies on the same allegations as for her Section 1692e claim, insisting that Defendant's threat to sue Plaintiff for "check fraud," call Plaintiff's employer, and garnish Plaintiff's wages was unfair because it attempted to scare her into making a payment on the subject debt. (Dkt. No. 1 at ¶ 26.)

"Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA." *Baker v. Allstate Fin. Servs., Inc.*, 554 F.Supp.2d 945, 953 (D. Minn. 2008) (citing S.Rep. No. 95–382, at 4 (1977) ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.")); *see also Fox v. ProCollect, Inc.*, No. 4:17CV00634 JLH, 2019 WL 386159, at *8 (E.D. Ark. Jan. 30, 2019) (collecting cases holding that "because other FDCPA provisions addressed the type of conduct at issue — improper disclosures and false threats of legal action — § 1692f, the catchall provision, did not apply"); *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 467 (6th Cir. 2014) ("Section 1692f is a catchall provision that forbids a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."). Because Plaintiff's 1692f claim is predicated on the same actions as her 1692e claim, Section 1692f does not apply. Even if this were not the case, Plaintiff's conclusory allegation that Defendant attempted to scare her into making a payment by threatening to contact her employer, garnish her wages, or file a lawsuit are not material violations if those options were legally available to Defendant and Plaintiff has not alleged that they were not. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

              *c.*  15 U.S.C. § 1692g

Section 1692g(a) provides that to "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing…the amount of the debt; the name of the creditor to whom the debt is owed" and the process by which the consumer can dispute the debt. Plaintiff alleges that Defendant violated this section by "failing to properly inform Plaintiff as to Plaintiff's rights for debt verification in a manner which was not reasonably calculated to confuse or frustrate the

1    least sophisticated consumer" and failing to advise her of the right to "dispute the validity of the

2    subject debt." (Dkt. No. 1 at ¶ 27.) Given Plaintiff's allegation that Defendant never sent her any

3    written correspondence notifying her of her rights, she has pled a claim under Section 1692g.

\*\*\*

Based on the foregoing, Plaintiff's FDCPA claim appears facially meritorious at least in part and the Complaint is sufficient to support a judgment on her Complaint. The second and third *Eitel* factors therefore weigh in favor of default judgment.

### 3.     Amount of Money at Stake

The fourth *Eitel* factor balances the amount of money at stake in the claim with the seriousness of the defendant's conduct. *PepsiCo*, *Inc*. *v*. *Cal*. *Sec*. *Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "When the money at stake is substantial, default judgment is discouraged." *Bd*. *of Trs*. *v*. *Core Concrete Constr*., *Inc*., No. 11-02532 LB, 2012 WL 380304, at \*4 (N.D. Cal. Jan. 17, 2012) (internal citation omitted). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id*. (internal citation omitted). In determining whether the amount at stake is reasonable, courts consider a plaintiff's declarations, calculations, and other documentation of damages. *Truong Giang Corp*. *v*. *Twinstar Tea Corp*., No. 06-cv-03594 JSW, 2007 WL 1545173, at \*12 (N.D. Cal. May 29, 2007)(internal citation omitted). Here, Plaintiff seeks $1,000 in statutory damages which are authorized under the FDCPA. Because this amount is neither substantial nor unreasonable and the statutory damages are tied to Defendant's misconduct, the fourth factor weighs in favor of default judgment.

### 4.     Possibility of Dispute Involving Material Facts

The fifth *Eitel* factor considers the possibility that material facts may be in dispute. *Eitel*, 782 F.2d at 1471-72. Where, as here, a plaintiff has filed a well-pleaded complaint alleging the elements necessary to establish its claims, and the Clerk has entered default upon defendant's failure to answer, a court may find the possibility of a dispute as to material facts is unlikely. *See Capitol Records v*. *Barrera*, No. 06-07212-JSW, 2007 WL 1113949, at \*3 (N.D. Cal. Apr. 13, 2007); *Elektra Entm't Grp*., *Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

7

Plaintiff properly served Defendant's registered agent for service of process, but Defendant failed to appear and respond to the complaint, and the Clerk entered default accordingly. Plaintiff's well-pleaded allegations, accepted as true, sufficiently allege a violation of the FDCPA. *TeleVideo Sys.*, 826 F.2d at 917-18. The record reflects Defendant's silence despite opportunities to respond, so there is little possibility of a dispute of material facts. Therefore, this factor weighs in favor of default judgment.

### 5. Excusable Neglect

The sixth *Eitel* factor considers whether the defendant's default may have been due to excusable neglect. *Eitel*, 782 F.2d at 1471. Defendant was properly served on January 10, 2019. (Dkt. No. 8.) Despite awareness of the lawsuit, Defendant has not appeared in this matter, and nothing in the record suggests failure to appear is based on excusable neglect. *See Shanghai Automation Instrument Co.*, *Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

### 6. Policy Favoring Decision on the Merits

Finally, the seventh *Eitel* factor reflects the policy that generally disfavors default judgments because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F. 2d at 1471-72. "However, the mere existence of [Rule] 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Although this factor weighs against default, it is not alone dispositive nor does it weigh against granting default given the impossibility of deciding a case on its merits when defendant fails to answer. *See Willamette Green Innovation Ctr.*, *LLC* v. *Quartis Capital Partners*, No. 13-cv-00848-JCS, 2014 WL 5281039, at *13 (N.D. Cal. Jan. 21, 2014) (internal citation omitted).

***

All but one of the *Eitel* factors support entry of default judgment against Defendant. Accordingly, Plaintiff is entitled to default judgment on the FDCPA claim.

### C. Relief Sought

Having determined that the motion should be granted, the Court turns to the matter of the relief to which Plaintiff is entitled. In assessing the appropriate amount of damages on default judgment, the Court does not presume the truth of any factual allegations related to the amount of

8

1  damages. *TeleVideo Sys.*, 826 F.2d at 917-18. Thus, Plaintiff is required to prove all damages
2  sought in the complaint, and the Court must ensure the amount is reasonable and demonstrated by
3  the evidence through testimony or written affidavit. Fed. R. Civ. P. 55(b); *Televideo Sys.*, 826
4  F.2d at 917-18; *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222,
5  1226 (N.D. Cal. 2005); *PepsiCo Inc.*, 238 F. Supp. 2d at 1175 (internal citation omitted). Plaintiff
6  requests statutory damages as well as attorneys' fees and costs.

### 1) Statutory Damages

The FDCPA allows for statutory damages up to $1,000. 15 U.S.C. § 1692k(a)(2)(A). Statutory damages are available without proof of actual damages. *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982). In determining an appropriate amount of damages to be awarded, the court is to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). A court in this District has previously awarded $400 under the FDCPA for a single voicemail that was deceptive in nature. *See Smith v. Simm Associates, Inc.*, No. C12-4622 TEH, 2013 WL 1800019, at *2 (N.D. Cal. Apr. 29, 2013) ("The script of the call makes it clear that the caller attempted to hide the nature of the call"). Another court in this District has held that statutory damages of $1,000 was appropriate where a defendant made two phone calls to a plaintiff that threatened criminal prosecution and another phone call to plaintiff's workplace representing that defendant was from the "D.A.'s Office." *See Ortega v. Griggs & Associates LLC*, No. 5:11-CV-02235-EJD, 2012 WL 2913202, at *1 (N.D. Cal. July 13, 2012). In another case, the court awarded $700 in statutory damages where the defendant left several voicemails threatening to initiate legal action if the plaintiff did not call back. *See Evans v. Creditor's Specialty Service, Inc.*, No. 15-cv-03355-BLF, 2016 WL 730277 at *3 (N.D. Cal., Feb. 24, 2016).

Here, Plaintiff received multiple calls and Defendant left four voicemails falsely stating that it had initiated legal action against her. These actions show frequent disregard for the requirements of the FDCPA, but do not warrant the maximum statutory penalty given that the calls occurred over a relatively short period of time. Accordingly, the Court recommends $750 in statutory damages.

### 2) Attorneys' Fees and Costs

The FDCPA also provides for an award of fees and costs to the prevailing plaintiff. 15 U.S.C. 1692k(a)(3). Reasonable attorneys' fees are based on a "lodestar" calculation. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The 'lodestar' is calculated by multiplying the number of hours ... reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The reasonable hourly rate is guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), amended on other grounds by 808 F.2d 1373 (9th Cir. 1987) (internal citation omitted). In terms of reasonable amount of time spent on the case, courts should award fees based on "the number of hours reasonably expended on the litigation" excluding hours that are excessive or unnecessary. *Hensley*, 461 U.S. at 433 (internal citation omitted).

Plaintiff seeks a lodestar fee award of $2,768.75. (Dkt. No. 19-1.) Of this total, Plaintiff seeks $2,550 for 6 hours of work performed by counsel Marwan Daher and $218.75 for 1.75 hours of work performed by paralegal Laura Dixon. (Dkt. No. 25-1.)

First, with respect to Mr. Daher's hourly rate, Mr. Daher, who was admitted to the bar in 2017, seeks an hourly rate of $425. (Dtk. No. 25 at ¶ 3.) Although Mr. Daher attests that he has received this rate in two actions in Illinois and that it is consistent with that charged by other attorneys who practice consumer law (*id*. at ¶¶ 8-9), the relevant inquiry is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210-11. In this District, an hourly rate of $425 for an attorney with two year's experience exceeds the hourly rate approved of for attorneys in debt collection practice cases. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 689 (N.D. Cal. 2016) (approving a $350 hourly rate for a senior associate and a $400 hourly rate for other attorneys in an FDCPA action); *Jacobson v. Persolve, LLC*, No. 14-cv-00735-LHK, 2016 WL 7230873, at *5 (N.D. Cal., Dec. 14, 2016) (approving a $500 hourly rate for an attorney with 19 years of experience and an hourly rate of $400 for an attorney with approximately 9 years of

experience); *Evans v. Creditor's Specialty Service Inc*., No. 15-CV-03355-BLF, 2016 WL 730277, at *4 (N.D. Cal. Feb. 24, 2016) (approving a rate of $320 per hour for an attorney with nearly 8 years experience and noting that an hourly rate of $290 had been approved for the same attorney two years beforehand). Indeed, the survey Plaintiff cites in support of the proposed hourly rate—the United States Consumer Law Attorney Fee Survey Report 2015-2016, p. 43, see https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf —indicates that in this District the average hourly rate of consumer attorneys with 1-3 years of experience (such as Mr. Daher) is $225. Accordingly, the Court recommends an hourly rate of $225 which is in keeping with the amount generally approved of for attorneys in this District in debt collection practice cases with two year's experience.

Second, with respect to the number of hours billed by Mr. Daher, the Court finds the 6 hours requested reasonable and does not recommend any reduction in the number of hours. *See Freligh v. Roc Asset Sols., LLC*, No. 16-CV-00653-MEJ, 2016 WL 3748723, at *9 (N.D. Cal. June 8, 2016), report and recommendation adopted, No. 16-CV-00653-YGR, 2016 WL 3747616 (N.D. Cal. July 11, 2016) (finding 13 hours reasonable and collecting similar FDCPA cases re: same).

Third, Plaintiff seeks $218.75 for 1.75 hours of work performed by paralegal Laura Dixon. (Dkt. No. 25-1.) Ms. Dixson's hourly rate is $125 which appears to be below rates approved in other recent debt collection cases. *See, e.g.*, *Jacobson*, 2016 WL 7230873 at *7 (approving a rate of $180 per hour for a law clerk*); Long v. Nationwide Legal File & Serve, Inc*., No. 12-cv-03578-LHK, 2014 WL 3809401, at *12 (N.D. Cal., July 23, 2014) (approving a rate of $175 in a debt collection practices case for a law clerk). However, "[f]ees for law clerks and paralegals are compensable as attorney's fees so long as the work is legal rather than clerical in nature." *Jacobson*, 2016 WL 7230873 at *7; *see also Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). "Tasks such as preparing proofs of service, processing records, posting letters for mail, photocopying, three-hole punching, internal filing, calendaring, and

preparing the summons and complaint for filing have been found to be purely clerical tasks for which fees are not recoverable." *Borillo v. Legal Recovery Law Offices, Inc.*, No. 5:16-CV-05508-HRL, 2017 WL 1758088, at *6 (N.D. Cal. May 5, 2017), report and recommendation adopted, No. 16-CV-05508-LHK, 2017 WL 2265571 (N.D. Cal. May 24, 2017) (collecting cases re: same). Here, Ms. Dixson's work is described as "filed the complaint," "issued summons and sent to Process Server to serve Defendant," and "filed executed summons." (Dkt. No. 25-1 at 2.) These activities are clerical in nature and not recoverable. *See Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012). Accordingly, the Court does not recommend awarding any fees based on work performed by Ms. Dixson.

Finally, Plaintiff seeks $857.50 in costs which consist of the filing fee, the service fee, and mailing fees. Because these costs are reasonable and the FDCPA permits a court to award costs, *see* 15 U.S.C. § 1692k(a)(3), the Court recommends that Plaintiff be awarded costs in the amount of $857.50.

**CONCLUSION**

For the reasons stated above, the Court recommends that the district court GRANT Plaintiff's motion for default judgment and award Plaintiff $750 in statutory damages, $1,350 in attorneys' fees, and $857.50 in costs.

Any party may file objections to this report and recommendation with the district judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: May 7, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge